United States District Court
Southern District of Texas
**ENTERED**
March 12, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ART REYES, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 4:24-cv-1415 |
| HARRIS COUNTY, CHRISTOPHER ROSS, | § | |
| AMANDA FRY, ALEXZANDER FRENCH | § | |
| MICHAEL, and JOSEPH M. DOUGLASS, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before this Court is Harris County's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 10). Art Reyes ("Plaintiff") responded in opposition, (Doc. No. 11), to which Harris County replied, (Doc. No. 17). Having considered the motion and the relevant pleadings, the Court **GRANTS** the Motion.[1] (Doc. No. 10).

### I.   Background

This case arises from a neighborhood dispute. Plaintiff alleges that is a dues-paying member of the Deerfield Village ("DV") Homeowners' Association ("HOA"). (Doc. No. 7 at 12). Proceeding *pro se*, he alleges that, on numerous occasions, he was falsely accused of misconduct by his neighbors and consequently falsely arrested by law enforcement officers. He also contends that his neighbors did not get arrested or charged for similar conduct, and thus, he was unequally treated.

According to Plaintiff, on July 25, 2022, his neighbors falsely accused him of disturbing the DV HOA meeting. (*Id.* at 10). Subsequently, law enforcement was called, and Deputy Kevin

---

[1] Before Plaintiff filed his First Amended Complaint, Harris County had filed a Motion to Dismiss Plaintiff's Original Complaint. (Doc. No. 8). Given that Harris County renewed its Motion after Plaintiff's filing of his First Amended Complaint and that the Court grants that renewed Motion to Dismiss, the original Motion is denied as moot. (*Id.*).

Serrano allegedly detained Plaintiff. (*Id.*). Notably, Plaintiff admits that "Deputy Serrano did not arrest [Plaintiff]." (*Id.* at 18). It is unclear on what charges Deputy Serrano "detained" Plaintiff, but Assistant District Attorney Kaitlin Patterson allegedly "cleared" Plaintiff of all charges. (*Id.* at 10).

On August 3, 2022, Plaintiff's neighbors called the police on Plaintiff again—this time, for allegedly initiating an altercation with Plaintiff's neighbor, Ali Lamkahouan, and two lifeguards at the DV community swimming pool. (*Id.*). Plaintiff, however, denies these allegations and contends instead that Lamkahouan verbally threatened Plaintiff. (*Id.*). Nevertheless, Deputies Christopher Ross and Eric McCartney arrested Plaintiff—but not Lamkahouan—and jailed him overnight for trespassing on the community swimming pool. (*Id.*). The charges were allegedly "dropped" by Judge Genesis Draper of Harris County Criminal Court at Law No. 12 for lack of probable cause. (*Id.* at 11).

On September 17, 2022, Plaintiff allegedly left a letter on the front steps of another neighbor, Melissa Auer (though the contents of the letter are undisclosed). (*Id.*). Subsequently, Auer allegedly verbally and physically assaulted Plaintiff and accused him of sexual assault. (*Id.*). Deputy Roddrick Marshall allegedly witnessed the interaction but declined to arrest or charge Auer. (*Id.*).

On October 23, 2022, Plaintiff was riding a bicycle on the DV community bike trail. (*Id.*). His neighbor, Brent Burris, allegedly filed a trespass complaint to Deputy Travis Young. (*Id.*). Plaintiff alleges that, on April 4, 2023, Burris, Deputy Young, and Assistant District Attorney Leslie Wallrath pursued this criminal complaint in court, but Judge Draper again dismissed the charges. (*Id.* at 13).

On October 27, 2022, Plaintiff was again biking on the neighborhood trail when Auer allegedly verbally harassed and threatened Plaintiff. (*Id.* at 12). Deputy Damaris Lopez reported to the scene and allegedly refused to charge Auer with any crimes. (*Id.*). Instead, he gave Plaintiff a trespass warning to "not visit the DV common amenities." (*Id.*).[2] Moreover, on November 9, 2022, Auer allegedly "aggressively approached" Plaintiff with "a blunt elongated weapon," but Deputy Andrea Dalia and Sergeant Charles Gbunblee allegedly refused to investigate or arrest Auer. (*Id.* at 13).

Plaintiff's dispute with Auer apparently culminated on February 27, 2024, when Auer filed a trespass complaint with law enforcement agents, including Deputies Amanda Fry and Christopher Mook and Sergeant Rachel Riojas. (*Id.* at 14). According to Plaintiff, the trespass complaint alleged that Plaintiff trespassed on community swimming pool premises on August 2 and 3, 2022, and on Auer's property on September 17, 2022 (when he allegedly left the aforementioned letter on her front step). (*Id.*). Auer apparently further alleged that Plaintiff tried to enter the front door of the home, demanded to speak to Auer's daughter, and refused to leave her property. (*Id.*). Based on this criminal complaint, Deputy Fry and Assistant District Attorneys Sean Powers and Michael Abner, Jr. allegedly obtained an arrest warrant. (*Id.* at 15). On March 5, 2024, Deputies Alexzander French Michael, Omar Ruiz, Gary McCloud, Edwena Johnson, and H. Brown and Sergeants Joseph Douglass and Anna Ortiz executed the arrest warrant. (*Id.* at 16). As far as the Court is aware, the charges stemming from this arrest remain pending. (*Id.*).

Important to Plaintiff's discrimination claim, Plaintiff, an Asian male, alleges that Deputy Eddie Hazel investigated Plaintiff's assault allegations against Auer, a white female, and concluded

---

[2] It is unclear why Plaintiff cannot utilize the DV amenities if he is indeed a resident of DV. That unexplained factual omission is not one that will prevent the Court from ruling.

that she "merited a Class C misdemeanor charge for assault." (*Id.* at 13). While Plaintiff relayed this conclusion to several police officers, they declined to arrest or charge Auer. (*Id.* at 13–14).

Plaintiff brings several claims based on the foregoing allegations, but the nature of those claims is less than clear. Under the section "Causes of Action," Plaintiff writes the following headers:

(1) "Discrimination and Unequal Treatment under the Law—Police Falsely Detained Art[, Plaintiff, on July 25, 2022]," (*id.* at 18);

(2) "Discrimination and Unequal Treatment under the Law—Police Falsely Arrested Art, Police Falsely Charged Art, and Police Falsely Imprisoned Art [on August 3, 2022]," (*id.*);

(3) "Discrimination and Unequal Treatment under the Law—Police Failed to Arrest Ali [on August 3, 2022]," (*id.* at 19);

(4) "Discrimination and Unequal Treatment under the Law—Police Failed to Charge and Arrest Melissa Auer [on September 17, October 27, and November 9, 2022]," (*id.* at 21);

(5) "Unlawful Orders [for Deputies' allegedly carrying out "unlawful orders" from neighbors to give Plaintiff trespass warnings]," (*id.*);

(6) "Discrimination and Unequal Treatment under the Law—Police Falsely Charged Art [on April 4, 2023]," (*id.* at 22); and

(7) "Discrimination and Unequal Treatment under the Law—Police Falsely Arrested Art, Police Falsely Charged Art, and Police Falsely Imprisoned Art [on March 5, 2024]," (*id.*).

Illuminating Plaintiff's intended causes of action are Plaintiff's jurisdiction section, which states that "Plaintiff is suing for relief under 42 U.S.C. § 1983," (*id.* at 2); a section entitled "Violation of Fair Housing Act (FHA)," which alleges, for the first time, that officers violated Plaintiff's right to visit common DV amenities, (*id.* at 24); the conclusion section, which alleges that officers violated Plaintiff's Fourth Amendment right to be free from unreasonable search and

4

seizure, Fifth Amendment right against double jeopardy (by charging Plaintiff three times for trespassing), and Fourteenth Amendment right to due process and equal protection," (*id.* at 28–29). There are also scattered references to the Texas Penal Code §§ 36.06 and 38.02(a). (*Id.* at 19).

Reading Plaintiff's *pro se* Complaint liberally, which it must, *see Andrade v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006), the Court discerns the following causes of action:

(1) a § 1983 unreasonable seizure claim against Deputy Serrano for Plaintiff's detention on July 25, 2022;

(2) a § 1983 unreasonable seizure claim against Deputies Ross and McCartney for Plaintiff's arrest on August 3, 2022;

(3) a § 1983 malicious prosecution claim against Deputies Ross and McCartney for charging Plaintiff with trespass on August 3, 2022;

(4) a § 1983 malicious prosecution claim against Deputy Young and Assistant District Attorney Wallrath for charging Plaintiff with trespass on April 4, 2023;

(5) a § 1983 unreasonable seizure claim against Deputies Alexzander French Michael, Ruiz, McCloud, Johnson, and Brown, and Sergeants Douglass and Ortiz for arresting Plaintiff on March 5, 2024;

(6) a § 1983 malicious prosecution claim against Deputy Amanda Fry and ADAs Powers and Abner for obtaining the warrant against Plaintiff on February 28, 2024;

(7) a § 1983 equal protection claim against Deputies Serrano, Ross, McCartney, Marshall, Gbunblee, Dalia, Young, Fry, Michael, Ruiz, McCloud, Johnson, and Brown, Sergeants Douglass and Ortiz, and Assistant District Attorneys Wesley, Ortiz, Powers, and Abner for discriminating against Plaintiff on the basis of race by arresting and jailing him but not his neighbors;

(8) a § 1983 double jeopardy claim—though unclear against whom—for charging Plaintiff multiple times for trespass; and

(9) a FHA claim against Deputies Ross, McCartney, Lopez, Burton, and Sergeant Anderson for discriminating against Plaintiff's right to use DV common amenities based on his race.

To be sure, Plaintiff also purports to bring a claim against Deputies Lopez and Burton for allegedly "carry[ing] out . . . unlawful order[s]" from Plaintiff's neighbors, but that is not, as pleaded, a cognizable cause of action. Similarly, Plaintiff purports to bring a claim under the Texas Penal Code §§ 36.06 and 38.02(a), but "the Texas Penal Code does not create private causes of action." *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.). Thus, these latter so-called causes of action are dismissed.

## II.     Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual

6

x

x

assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.   Analysis

Section 1983 provides a cause of action against those who, under color of state law, deprive a citizen of the United States "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under § 1983, "local governments are responsible only for "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). "They are not vicariously liable under § 1983 for their employees' actions." *Id.*

Accordingly, for Harris County to be liable under § 1983, Plaintiff must plead sufficient facts to state three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). In turn, there are three ways of establishing a municipal policy for establishing liability under *Monell*: (1) a plaintiff can show written policy statements, ordinances, or regulations; (2) a plaintiff can widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; and (3) a single decision, which may constitute municipal policy in rare circumstances when the official or entity possessing final policymaking authority for the action performs the specific act that forms the basis of the § 1983 claim. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019).

Here, Plaintiff fails to allege facts supporting any of the three required elements of a *Monell* claim. The Complaint is devoid of any mention of a policymaker, an official policy—written or otherwise—and how that unmentioned official policy was the moving force behind the alleged constitutional violations. Instead, it appears that Plaintiff has named Harris County as a defendant solely as the alleged employer of the deputies that allegedly violated his rights. Again, "under § 1983, local governments are responsible only for their *own* illegal acts" and "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60 (internal quotes omitted). Consequently, Plaintiff has not adequately stated a cognizable § 1983 claim against Harris County.

That leaves only the claim under the FHA. That claim also fails because Harris County did not engage in prohibited conduct under the Act. The FHA creates a private right of action for an "discriminatory housing practice," 42 U.S.C. § 3613(a)(1)(A), which is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title," *id.* § 3602(f). Those sections, however, are wholly inapplicable here. Section 3604 makes unlawful discrimination in the sale or rental of housing or advertisements thereof. *Id.* § 3604. Section 3605 prohibits discrimination in real estate-related transactions. *Id.* § 3605. Section 3606 proscribes discrimination in brokerage services. *Id.* § 3606. Finally, § 3617 prohibits coercion, intimidation, or interference with any rights secured by the aforementioned sections. *Id.* § 3617. Plaintiff has not alleged that Harris County discriminated in the sale or rental of housing or advertisements thereof, in real estate transactions with Plaintiff, in brokerage services, or otherwise coerced, intimidated, or interfered with his rights to be free from such discrimination. Thus, Plaintiff's FHA claim is dismissed.

## IV. Conclusion

For the foregoing reasons, Harris County's Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED**. (Doc. No. 10). All of Plaintiff's claims against Harris County are dismissed. Harris County's Motion to Dismiss Plaintiff's Original Complaint is **DENIED** as moot. (Doc. No. 8).

Signed on this 13th day of March 2025.

Andrew S. Hanen
United States District Judge