United States District Court
Southern District of Texas
**ENTERED**
March 12, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ART REYES, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 4:24-cv-1415 |
| HARRIS COUNTY, CHRISTOPHER ROSS, | § | |
| AMANDA FRY, ALEXZANDER FRENCH | § | |
| MICHAEL, and JOSEPH M. DOUGLASS, | § | |
| | § | |
| *Defendants.* | § | |

**ORDER**

Pending before this Court is Christopher Ross, Amanda Fry, Alexzander Michael, and Joseph Douglass' (collectively, "Deputy Defendants") Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 20). Plaintiff has had months to respond in opposition but did not do so. As such, this motion is deemed unopposed. *See* S.D. Tex. L.R. 7.4 ("Failure to respond to a motion will be taken as a representation of no opposition."). Nevertheless, since it is a motion to dismiss, the Court must address the merits of the motion. Having considered the motion and the relevant pleadings, the Court **GRANTS** the Motion. (Doc. No. 20).

## I.    Background

This case arises from a neighborhood dispute. Plaintiff alleges that he is a dues-paying member of the Deerfield Village ("DV") Homeowners' Association ("HOA"). (Doc. No. 7 at 12). Proceeding *pro se*, he alleges that, on numerous occasions, he was falsely accused of misconduct by his neighbors and consequently falsely arrested by law enforcement officers. He also contends that his neighbors did not get arrested or charged for similar conduct, and thus, he was unequally treated.

According to Plaintiff, on July 25, 2022, his neighbors falsely accused him of disturbing the DV HOA meeting. (*Id.* at 10). Subsequently, law enforcement was called, and Deputy Kevin Serrano allegedly detained Plaintiff. (*Id.*). Notably, Plaintiff admits that "Deputy Serrano did not arrest [Plaintiff]." (*Id.* at 18). It is unclear on what charges Deputy Serrano "detained" Plaintiff, but Assistant District Attorney Kaitlin Patterson allegedly "cleared" Plaintiff of all charges. (*Id.* at 10).

On August 3, 2022, Plaintiff's neighbors called the police on Plaintiff again—this time, for allegedly initiating an altercation with Plaintiff's neighbor, Ali Lamkahouan, and two lifeguards at the DV community swimming pool. (*Id.*). Plaintiff, however, denies these allegations and contends instead that Lamkahouan verbally threatened Plaintiff. (*Id.*). Nevertheless, Deputies Christopher Ross and Eric McCartney arrested Plaintiff—but not Lamkahouan—and jailed him overnight for trespassing on the community swimming pool. (*Id.*). The charges were allegedly "dropped" by Judge Genesis Draper of Harris County Criminal Court at Law No. 12 for lack of probable cause. (*Id.* at 11).

On September 17, 2022, Plaintiff allegedly left a letter on the front steps of another neighbor, Melissa Auer (though the contents of the letter are undisclosed). (*Id.*). Subsequently, Auer allegedly verbally and physically assaulted Plaintiff and accused him of sexual assault. (*Id.*). Deputy Roddrick Marshall allegedly witnessed the interaction but declined to arrest or charge Auer. (*Id.*).

On October 23, 2022, Plaintiff was riding a bicycle on the DV community bike trail. (*Id.*). His neighbor, Brent Burris, allegedly filed a trespass complaint to Deputy Travis Young. (*Id.*). Plaintiff alleges that, on April 4, 2023, Burris, Deputy Young, and Assistant District Attorney

Leslie Wallrath pursued this criminal complaint in court, but Judge Draper again dismissed the charges. (*Id.* at 13).

On October 27, 2022, Plaintiff was again biking on the neighborhood trail when Auer allegedly verbally harassed and threatened Plaintiff. (*Id.* at 12). Deputy Damaris Lopez reported to the scene and allegedly refused to charge Auer with any crimes. (*Id.*). Instead, he gave Plaintiff a trespass warning to "not visit the DV common amenities." (*Id.*).[1] Moreover, on November 9, 2022, Auer allegedly "aggressively approached" Plaintiff with "a blunt elongated weapon," but Deputy Andrea Dalia and Sergeant Charles Gbunblee allegedly refused to investigate or arrest Auer. (*Id.* at 13).

Plaintiff's dispute with Auer apparently culminated on February 27, 2024, when Auer filed a trespass complaint with law enforcement agents, including Deputies Amanda Fry and Christopher Mook and Sergeant Rachel Riojas. (*Id.* at 14). According to Plaintiff, the trespass complaint alleged that Plaintiff trespassed on community swimming pool premises on August 2 and 3, 2022, and on Auer's property on September 17, 2022 (when he allegedly left the aforementioned letter on her front step). (*Id.*). Auer apparently further alleged that Plaintiff tried to enter the front door of the home, demanded to speak to Auer's daughter, and refused to leave her property. (*Id.*). Based on this criminal complaint, Deputy Fry and Assistant District Attorneys Sean Powers and Michael Abner, Jr. allegedly obtained an arrest warrant. (*Id.* at 15). On March 5, 2024, Deputies Alexzander French Michael, Omar Ruiz, Gary McCloud, Edwena Johnson, and H. Brown and Sergeants Joseph Douglass and Anna Ortiz executed the arrest warrant. (*Id.* at 16). As far as the Court is aware, the charges stemming from this arrest remain pending. (*Id.*).

---

[1] It is unclear why Plaintiff cannot utilize the DV amenities if he is indeed a resident of DV. That unexplained factual omission is not one that will prevent the Court from ruling.

Important to Plaintiff's discrimination claim, Plaintiff, an Asian male, alleges that Deputy Eddie Hazel investigated Plaintiff's assault allegations against Auer, a white female, and concluded that she "merited a Class C misdemeanor charge for assault." (*Id.* at 13). While Plaintiff relayed this conclusion to several police officers, they declined to arrest or charge Auer. (*Id.* at 13–14).

Plaintiff brings several claims based on the foregoing allegations, but the nature of those claims is less than clear. Under the section "Causes of Action," Plaintiff writes the following headers:

(1) "Discrimination and Unequal Treatment under the Law—Police Falsely Detained Art[, Plaintiff, on July 25, 2022]," (*id.* at 18);

(2) "Discrimination and Unequal Treatment under the Law—Police Falsely Arrested Art, Police Falsely Charged Art, and Police Falsely Imprisoned Art [on August 3, 2022]," (*id.*);

(3) "Discrimination and Unequal Treatment under the Law—Police Failed to Arrest Ali [on August 3, 2022]," (*id.* at 19);

(4) "Discrimination and Unequal Treatment under the Law—Police Failed to Charge and Arrest Melissa Auer [on September 17, October 27, and November 9, 2022]," (*id.* at 21);

(5) "Unlawful Orders [for Deputies' allegedly carrying out "unlawful orders" from neighbors to give Plaintiff trespass warnings]," (*id.*);

(6) "Discrimination and Unequal Treatment under the Law—Police Falsely Charged Art [on April 4, 2023]," (*id.* at 22); and

(7) "Discrimination and Unequal Treatment under the Law—Police Falsely Arrested Art, Police Falsely Charged Art, and Police Falsely Imprisoned Art [on March 5, 2024]," (*id.*).

Illuminating Plaintiff's intended causes of action are Plaintiff's jurisdiction section, which states that "Plaintiff is suing for relief under 42 U.S.C. § 1983," (*id.* at 2); a section entitled "Violation of Fair Housing Act (FHA)," which alleges, for the first time, that officers violated

Plaintiff's right to visit common DV amenities, (*id.* at 24); the conclusion section, which alleges that officers violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, Fifth Amendment right against double jeopardy (by charging Plaintiff three times for trespassing), and Fourteenth Amendment right to due process and equal protection," (*id.* at 28–29). There are also scattered references to the Texas Penal Code §§ 36.06 and 38.02(a). (*Id.* at 19).

Reading Plaintiff's *pro se* Complaint liberally, which it must, *see Andrade v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006), the Court discerns the following causes of action:

(1) a § 1983 unreasonable seizure claim against Deputy Serrano for Plaintiff's detention on July 25, 2022;

(2) a § 1983 unreasonable seizure claim against Deputies Ross and McCartney for Plaintiff's arrest on August 3, 2022;

(3) a § 1983 malicious prosecution claim against Deputies Ross and McCartney for charging Plaintiff with trespass on August 3, 2022;

(4) a § 1983 malicious prosecution claim against Deputy Young and Assistant District Attorney Wallrath for charging Plaintiff with trespass on April 4, 2023;

(5) a § 1983 unreasonable seizure claim against Deputies Alexzander French Michael, Ruiz, McCloud, Johnson, and Brown, and Sergeants Douglass and Ortiz for arresting Plaintiff on March 5, 2024;

(6) a § 1983 malicious prosecution claim against Deputy Amanda Fry and ADAs Powers and Abner for obtaining the warrant against Plaintiff on February 28, 2024;

(7) a § 1983 equal protection claim against Deputies Serrano, Ross, McCartney, Marshall, Gbunblee, Dalia, Young, Fry, Michael, Ruiz, McCloud, Johnson, and Brown, Sergeants Douglass and Ortiz, and Assistant District Attorneys Wesley, Ortiz, Powers, and Abner for discriminating against Plaintiff on the basis of race by arresting and jailing him but not his neighbors;

(8) a § 1983 double jeopardy claim—though unclear against whom—for charging Plaintiff multiple times for trespass; and

(9) a FHA claim against Deputies Ross, McCartney, Lopez, Burton, and Sergeant Anderson for discriminating against Plaintiff's right to use DV common amenities based on his race.

To be sure, Plaintiff also purports to bring a claim against Deputies Lopez and Burton for allegedly "carry[ing] out . . . unlawful order[s]" from Plaintiff's neighbors, but that is not, as pleaded, a cognizable cause of action. Similarly, Plaintiff purports to bring a claim under the Texas Penal Code §§ 36.06 and 38.02(a), but "the Texas Penal Code does not create private causes of action." *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.). Thus, these latter so-called causes of action are dismissed.

## II.    Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

#### A. Section 1983 Claims

Section 1983 provides a cause of action against those who, under color of state law, deprive a citizen of the United States "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

##### i. First and Fourth Causes of Action: Claims against Non-Party Individuals

Plaintiff asserts eight § 1983 claims, but only some of those claims are aimed at the defendants actually joined and served in this case. In his first cause of action, for example, Plaintiff complains that Deputy Kevin Serrano falsely detained Plaintiff. (Doc. No. 7 at 18). Deputy Serrano, however, is not a defendant in this case. Similarly, in his fourth cause of action, Plaintiff alleges that Deputy Young and Assistant District Attorney Wallrath falsely charged—and thus, maliciously prosecuted—him, but neither are defendants in this case. The Court acknowledges that Plaintiff is proceeding *pro se*, but that cannot excuse the lack of jurisdiction over not joined and not served.

To the extent that Plaintiff seeks to hold the named Deputy Defendants liable for the conduct of those non-party individuals, that attempt fails. That is because, in a § 1983 action,

7

"[p]ersonal involvement is an essential element . . . ." *Thompson v. Steele*, 709 F.2d 381, 382 (5th

Cir. 1983). Plaintiff has not alleged any facts that involve the named Deputy Defendants in his first

or fourth causes of action; nor has he alleged any facts that may give rise to so-called "bystander

liability," whereby an officer may be liable under § 1983, notwithstanding lack of personal

involvement.[2] As such, Plaintiff's first and fourth causes of action are dismissed.

### ii. Second and Fifth Causes of Action: False Arrest Claims

To adequately state his false arrest claims, Plaintiff must plead that the respective officers

"did not have probable cause to arrest him." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir.

2004). Probable cause exists "when the totality of the facts and circumstances within a police

officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that

the suspect had committed or was committing an offense." *Id.* at 655–56.

In his second cause of action, Plaintiff claims that he was falsely arrested—without

probable cause—by Deputies Ross and McCartney[3] on August 3, 2022, when Plaintiff's neighbors

allegedly accused Plaintiff of initiating an altercation with them, harassing two female lifeguards,

and disrupting a neighborhood tennis committee meeting. (Doc. No. 7 at 10, 18).

Here, the totality of the facts and circumstances within Deputy Ross' knowledge was

sufficient to give rise to probable cause. Plaintiff admits that his neighbors relayed to Deputy Ross

that Plaintiff harassed two female lifeguards, initiated an altercation with a neighbor, and disrupted

a tennis committee meeting. (*Id.* at 18). This relayed information is sufficient for a reasonable

officer to conclude that Plaintiff had committed an offense. *See, e.g.,* TEX. PENAL CODE § 22.01(2)

---

[2] The elements of bystander liability are: The officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

[3] Deputy McCartney is not a party to this case but is mentioned here to more completely lay out Plaintiff's claims.

(criminalizing intentional or knowing threat of immunity bodily injury); *id.* § 42.01(a) (criminalizing disorderly conduct). *See also Robles v. Ciarletta*, 797 F. App'x 821, 831 (5th Cir. 2019) (finding probable cause based on information relayed via a 911 call).[4]

To be sure, Plaintiff denies these allegations, and the Court expresses no opinion on whether Plaintiff engaged in such criminal conduct. Nevertheless, "that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009). Plaintiff's own factual allegations here demonstrate such probability of criminal activity, regardless of his claimed innocence.

Moreover, while Plaintiff alleges that these charges were later dismissed for lack of probable cause, that dismissal does not affect the Court's conclusion here. "In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." *Elkins v. United States*, 364 U.S. 206, 223–24 (1960). "The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed [or dismissed]." *Id.* at 224. Therefore, Plaintiff's second cause of action—a § 1983 false arrest claim against Deputy Ross for the August 3, 2022 arrest—is dismissed.

Plaintiff's fifth cause of action, also alleging false arrest, fares no better. Plaintiff contends that, on March 5, 2024, Deputies Michael, Ruiz, McCloud, Johnson, and Brown, along with

---

[4] The Court acknowledges Plaintiff alleges that the charge against him was trespass, not assault or disorderly conduct. (Doc. No. 7 at 20). Nevertheless, an arrest is constitutionally sound if it arises from probable cause for *any* crime, even if not for the crime ultimately charged. *See O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Sergeants Douglass and Ortiz, arrested him pursuant to an arrest warrant founded on "a bogus trespassing charge."[5] (Doc. No. 7 at 22). Again, the crux of a false arrest claim is not whether the charge is actually false but rather there was probable cause. Plaintiff has not alleged any facts—other than his legal conclusion that the trespass charge was "bogus"—that would support his claim that the arrest warrant was not supported by probable cause. Indeed, this arrest was facilitated by a complaint from Auer, his neighbor. Auer had alleged that Plaintiff attempted to enter her home, demanded to speak to her minor daughter, and refused to leave her property. (*Id.* at 13). That criminal complaint gave rise to reasonable probability of criminal activity. *See, e.g.,* TEX PENAL CODE § 30.05 (criminalizing trespass onto "property of another").

Moreover, because the officers were executing an arrest warrant, they are entitled to the protections of the independent intermediary doctrine. "A warrant secured from a judicial officer typically insulates law enforcement personnel who rely on it from liability for unlawful arrest, even in the absence of probable cause." *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (internal quotes omitted). "The shield applies because if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation." *Id.* (internal quotes omitted). Here, the warrant was issued by a magistrate judge, Lionel Castro, and thus, that decision broke the chain of causation for any Fourth Amendment violation.

While there is one exception to the independent intermediary doctrine, that exception is inapplicable here. "If it is obvious that no reasonably competent officer would have concluded that a warrant should issue, a neutral magistrate's signature will not protect the offending officers." *Id.* (internal quotes omitted). Plaintiff has failed to allege any facts that would allow this Court to

---

[5] Among these individuals, only Deputy Michael and Sergeant Douglass are parties to the suit.

conclude that no reasonably competent officer would have concluded that a warrant should issue. Thus, Plaintiff's § 1983 false arrest claim against Deputy Michael and Sergeant Douglass is dismissed.

### iii. Third and Sixth Causes of Action: Malicious Prosecution Claims

Plaintiff alleges that, on two separate occasions, Deputy Defendants falsely charged him, and from those allegations, the Court inferred that his intended claim is a malicious prosecution claim under § 1983. Only recently did a constitutional—not state-law—malicious prosecution claim find firm footing within this Circuit. The Fifth Circuit recognized such a claim in *Gordy v. Burns*, 294 F.3d 722 (5th Cir. 2002), which was swiftly abrogated by the en banc decision in *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). In 2022, however, the Supreme Court recognized for the first time that there indeed exists a constitutional malicious prosecution claim under the Fourth Amendment, actionable under § 1983. *See Thompson v. Clark*, 596 U.S. 36, 42 (2022). Following that decision, the Fifth Circuit "reinstated" *Gordy*'s six elements for a constitutional malicious prosecution claim:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024) (citing *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)).[6] Importantly, because *Thompson* keyed the constitutional malicious

---

[6] The Court notes that *Gordy* derived these elements from state tort law—in that case, Louisiana's. *See Gordy*, 294 F.3d at 727 ("[T]he plaintiff in this case had to prove the six elements of malicious prosecution under Louisiana tort law."). Under Texas law, Plaintiff must also prove his actual innocence of the charges in addition to those six *Gordy* elements. *Brookshire Grocery Co.*, 952 S.W.3d 515, 517 (1997). *See also Gordy*, 294 F.3d at 727 ("Parenthetically, if these events had taken place in Texas instead of Louisiana, the plaintiff also would have had to prove that he was actually innocent of the charges."). The Fifth Circuit has made clear, however, that the actual-innocence element is not required under a § 1983 malicious prosecution claim. *See Armstrong*, 60 F.4th at 279 n.14 ("In Texas, actual innocence was also required. But as discussed, *Thompson* holds that no affirmative indication of innocence is necessary to prove a Fourth Amendment malicious prosecution claim."). As such, the Court applies the six *Gordy* elements as instructed by *Espinal*.

prosecution claim to the Fourth Amendment, Plaintiff must also allege facts that show "the threshold element of an unlawful Fourth Amendment seizure." *Armstrong*, 60 F.4th at 279 (citing *Thompson*, 596 U.S. at 43 n.2).

Both of Plaintiff's malicious prosecution claims fail to satisfy these elements. First, the Court understands Plaintiff's claim against Deputy Ross to be that, on August 3, 2022, by charging Plaintiff with a "bogus charge" of criminal trespass, Deputy Ross maliciously prosecuted him. (Doc. No. 7 at 9–10). This claim, however, cannot overcome even the threshold element: an unlawful Fourth Amendment seizure. As mentioned above, the complaint relayed to Deputy Ross—that Plaintiff allegedly harassed two female lifeguards, initiated an altercation with a neighbor, and disrupted a community meeting—gave Deputy Ross probable cause. That probable cause equipped Deputy Ross with authority with which to arrest Plaintiff without violating the Fourth Amendment. As the Fifth Circuit explained, "if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward." *Id.* at 279 n.15. The existence of probable cause also defeats the fourth element: the absence of probable cause for the criminal proceeding. Even if the Court assumes, *arguendo*, that the probable cause dissipated as more facts (though unalleged here) revealed themselves in the state proceeding, Plaintiff still cannot overcome the fifth element: malice. Plaintiff has not alleged any facts that would plausibly support an inference of malice. In fact, Plaintiff admits that Deputy Ross "believed the [neighbors'] charges against Art [Plaintiff.]" (Doc. No. 7 at 18). If Deputy Ross believed the allegations, then he had no malice.

Second, for similar reasons, Plaintiff's malicious prosecution claim against Deputy Amanda Fry also fails. He alleges that Deputy Fry and Assistant District Attorneys Powers and

12

Abner[7] "falsely charged" Plaintiff by obtaining an arrest warrant on February 28, 2024. (Doc. No. 7 at 22). Like Plaintiff's first malicious prosecution claim, his second one fails because he cannot satisfy the threshold element of unlawful seizure. As mentioned above, Plaintiff's seizure was pursuant to a valid arrest warrant properly backed by probable cause, and even if it were not, the independent intermediary doctrine makes the arrest constitutionally sound. Moreover, the proceeding initiated by the alleged false charge has not yet been terminated in favor of Plaintiff, an essential element of Plaintiff's claim. Finally, as before, Plaintiff does not allege any facts that would plausibly demonstrate malice by Deputy Fry. Consequently, both of Plaintiff's § 1983 malicious prosecution claims are dismissed.

### iv. Seventh Cause of Action: Equal Protection Claim

Read liberally, the Complaint also alleges that Plaintiff, an Asian male, and his family were subjected to unequal treatment under the law when they were given warnings or arrested for trespass, while Deputy Defendants ignored Plaintiff's reports of crimes against his neighbors. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) a state actor intentionally discriminated against him because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dept. of Ins.—Div. of Workers' Compensation*, 700 F.3d 227, 238 (5th Cir. 2012) (cleaned up).

Legal conclusions and the mere fact that Plaintiff is Asian aside, Plaintiff has not alleged any facts that would plausibly demonstrate that Deputy Defendants intentionally discriminated against him because of his race or, in the same vein, that those similarly situated, but outside the protected, class were treated better. That is because Plaintiff's own facts show that (1) no one else

---

[7] Assistant District Attorneys Powers and Abner are not parties to this case.

was accused of the same kind of conduct as Plaintiff—*i.e.*, trespass despite repeated warnings; and (2) Plaintiff's proposed comparators include an Asian male, namely, Ali Lamkahouan, who Plaintiff admits is a "Middle Eastern male," (Doc. No. 7 at 7). In short, Plaintiff has not alleged that another individual outside of his race was engaged in the same kind of conduct as he, but was treated more favorably. That failure means that the Court cannot draw a reasonable inference that Deputy Defendants intentionally discriminated against him based on his race or that similarly situated individuals were treated differently. Indeed, for this Court to wade into whether Harris County should have prosecuted another individual in the same protected class under a different criminal statute for different criminal conduct would be to impermissibly interfere with prosecutorial discretion. *See United States v. Batchelder*, 442 U.S. 114 at 134 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). Consequently, Plaintiff's Equal Protection claim is dismissed.

### v. Eight Cause of Action: Double Jeopardy Claim

Plaintiff alleges, for the first time in his conclusion section, that Deputy Defendants violated Plaintiff's "Fifth Amendment right to protection from double jeopardy when police charge[d] [Plaintiff] three times" for trespassing. (Doc. No. 7 at 28). The Double Jeopardy Clause reads, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.[8] "The clause at its core prevents a defendant from being tried more than once for a single offense." *United States v. Vasquez*, 899 F.3d 363, 381 (5th Cir. 2018) (citing *Missouri v. Hunter*, 459 U.S. 359, 365 (1983)). Plaintiff's three arrests alleged here, however, stemmed from three discrete instances of trespass: first on the DV community pool property;

---

[8] The Double Jeopardy Clause of the Fifth Amendment was made applicable to the states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784 (1969).

second on the DV bike trail; and third on Auer's home. Three criminal charges for three different allegedly-criminal acts do not violate the Double Jeopardy Clause.

Even if the Court assumes that the three arrests were for the same crime, this claim fails. "The double jeopardy clause of the Fifth Amendment [as applied to the states through the Fourteenth Amendment] protects a criminal defendant from being tried or punished more than once for the same crime by the same government; double jeopardy is not offended by the number of arrests to which a criminal defendant may be subjected." *Fleming v. United States*, No. CV-92-3101, 1993 WL 37304, at *9 (E.D.N.Y. Feb. 9, 1993) (citing *Illinois v. Vitale*, 447 U.S. 410, 415 (1980)). As such, Plaintiff cannot state a § 1983 claim for double jeopardy. This claim is dismissed.

## B. Ninth Cause of Action: FHA Claim

Lastly, Plaintiff alleges that Deputy Defendants violated the FHA and its regulations by interfering with Plaintiff's right to use DV community amenities. The FHA creates a private right of action for an "discriminatory housing practice," 42 U.S.C. § 3613(a)(1)(A), which is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title," *id.* § 3602(f). Those sections, however, are wholly inapplicable here. Section 3604 makes unlawful discrimination in the sale or rental of housing or advertisements thereof. *Id.* § 3604. Section 3605 prohibits discrimination in real estate-related transactions. *Id.* § 3605. Section 3606 proscribes discrimination in brokerage services. *Id.* § 3606. Finally, § 3617 prohibits coercion, intimidation, or interference with any rights secured by the aforementioned sections. *Id.* § 3617. Plaintiff has not alleged that Deputy Defendants discriminated in the sale or rental of housing or advertisements thereof, in real estate transactions with Plaintiff, in brokerage services, or otherwise coerced, intimidated, or interfered with his rights to be free from such discrimination. Therefore, Plaintiff's FHA claim is dismissed.

15

## IV.    Conclusion

For the foregoing reasons, all of Plaintiff's claims are dismissed.

Signed on this ___13th___ day of March 2025.

Andrew S. Hanen
United States District Judge